CIB-14, AUSA

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

OLANDO KEITH CHAFF,
    Petitioner,

v.

SUZANNE R. HASTINGS, WARDEN,
UNITED STATES OF AMERICA,
    Respondent.

CR. NO. 92-06138-CR-W.J.Z.

APPEAL NO. 95-4823

04-1278

---

MEMORANDUM OF LAW IN SUPPORT OF PETITION
FOR A WRIT OF HABEAS CORPUS PURSUANT TO
28 U.S.C. § 2241 BY A PERSON IN FEDERAL CUSTODY

---

HISTORICAL BACKGROUND

A. STATEMENT OF FACTS

On September 15, 1992, petitioner was arrested in connection with a scheme to rob Richard Seaman in his home, and what started off as a robbery ultimately turned into a kidnapping of Richard Seaman, his wife and child.

On September 16, 1992, the petitioner came before the court for his initial appearance. The court appointed John David, Esq. to represent the petitioner.

On January 12, 1993, following two earlier indictments, the grand jury returned a thirteen (13) count second superseding indictment against the petitioner and two co-defendants. The second superseding indictment charged this petitioner with conspiracy to commit extortion (count 1), attempted extortion (count 2), conspiracy to commit robbery (count 3), robbery (count 4), conspiracy to kidnap (count 5), travelling in interstate commerce with the intent to commit a crime of violence (count 6), using a telephone to facilitate an unlawful activity (count 8), using and carrying a firearm during and in relation to a crime of violence (count 10), and possession of a firearm by a convicted felon (count 12).

B.  **PROCEDURAL BACKGROUND**

On March 8, 1993, pursuant to a written plea agreement, the petitioner pleaded guilty to four (4) counts of the (second) superseding indictment; count four, five, ten and twelve, which were robbery, in violation of 18 U.S.C. § 1951 and § 1952, conspiracy to kidnap and hold for ransom, in violation of 18 U.S.C. § 1201(c), use of a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c), and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), respectfully.

On May 17, 1994, petitioner filed a pro-se motion to terminate the appointed counsel and for assignment of new appointed counsel.

On May 26, 1994, the court granted petitioner's motion for new counsel, appointing John O'Donnell, Esq., to succeed John David, Esq.

On July 28, 1994, the petitioner filed a motion to withdraw his guilty plea. The government responded on August 16, 1994. After a hearing on the motion was held, Magistrate Judge Barry Seltzer recommended that the motion be granted. The government filed objections to the report and recommendations and the District Court held a supplemental hearing on the motion to withdraw the plea. After the hearing, the report was overruled and the motion to withdraw the guilty plea was denied.

On June 26, 1995, petitioner was sentenced to 150 months imprisonment on counts 4 and 5, to run concurrently; 180 months imprisonment on count 12, to run concurrently to counts 4 and 5; and 60 months imprisonment on count 10, to run consecutively to counts 4, 5 and 12.

After the conviction and sentence, petitioner's counsel filed a timely notice of appeal to the Eleventh Circuit Court of Appeals. The court affirmed petitioner's conviction and sentence in a written but unpublished opinion, **Chaff v. United States**, 108 F.3d 342 (11th cir. 1997).

Petitioner filed his first motion to vacate, set-aside or correct sentence under Title 28 U.S.C. § 2255, on September 5, 1997. The District Court dismissed the motion on December 15,

1998, and denied the certificate of appealability.

## ARGUMENT

### DUE TO THE INTERVENING INTERPRETATION OF A CRIMINAL STATUTE BY THE SUPREME COURT, THE JURISDICTIONAL ELEMENT NEEDED TO PROSECUTE PETITIONER UNDER THE HOBBS ACT ROBBERY, TITLE 18 U.S.C.A. § 1951 & 2 WAS INSUFFICIENT.

Petitioner's claim is based on two Supreme Court cases interpreting the reach of federal criminal statutes where the questions of jurisdiction arises. The first is **United States v. Lopez**, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), in which the court decided on the proper test for the jurisdictional element in a federal statute is whether the activity "substantially affects" interstate commerce, Id. at 559, 115 S.Ct. 1624. The second, the Supreme Court interpretation of a criminal statute in **Dewey J. Jones v. United States**, 529 U.S. 848, 146 L.Ed.2d 902, 120 S.Ct. 1904 (2000), in which the court ruled that a home that was not used in commercial activity could not be the subject of federal jurisdiction simply because the home was insured by an insurance company that wrote claims out-of-state.

The petitioner who is convicted of the Hobbs Act robbery, Title 18 U.S.C. § 1951 & 2, will show the court that the element necessary to satisfy federal jurisdiction does not exist, an element that is essential for the Hobbs Act to stand. He will also rely on **Lopez**, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), to show that the robbery did not substantially affect interstate

- 4 -

commerce and that, as a consequence, there was an insufficient jurisdictional basis for his Hobbs Act, 18 U.S.C. § 1951 & 2 prosecution.

The petitioner claims that there was insufficient proof on the record to support a finding of guilt under 18 U.S.C. § 1951 ("The Hobbs Act"), because the government failed to show that the robbery of the victims in this case had an effect on interstate commerce sufficient to meet the jurisdictional nexus required under § 1951.

> 18 U.S.C. § 1951 states in pertinent part:
>
> (a) whoever in anyway or degree obstructs, delays, or affect commerce or the movement of any article or commodity in commerce, by robbery . . . or attempt or conspires to do so, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this Title or imprisoned not more than twenty years, or both.

18 U.S.C. § 1951(a). In order to prevail under a Hobbs Act violation, the government must prove two elements: 1) Interference with interstate commerce, which is a jurisdictional issue; and 2) The substantive criminal act, which in the instant case is robbery. **Stirone v. United States**, 361 U.S. 212, 218, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).

In the instant case, the petitioner was convicted of the "Hobbs Act" robbery, 18 U.S.C. § 1951 & 2, and the basis for federal jurisdiction was that interstate commerce was affected because the victim's home, where the robbery took place, was insured by General Accident Insurance Company, which writes claims

- 5 -

nationwide. This is where the court was led to believe that the filing of an insurance claim by the victims constituted the second essential element needed to convict under 18 U.S.C. § 1951 & 2. The petitioner, however, claims that was insufficient evidence to establish the jurisdictional requirement in federal prosecution under the Hobbs Act, 18 U.S.C. § 1951 & 2. Petitioner maintains that in light of **United States v. Lopez**, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), insufficient evidence existed to support a finding that the robbery in which petitioner is charged affected interstate commerce. The Supreme Court, in an arson case, specifically rejected the argument that a home subject to an insurance policy issued by an out-of-state insurance company was basis for federal jurisdiction. **Dewey J. Jones v. United States**, 529 U.S. 848, 146 L.Ed.2d 902, 120 S.Ct. 1904 (2000). To uphold the tenets of federalism, in order to prosecute an individual under the Hobbs Act, federal government bears onus of proving that the accused's conduct affected interstate commerce; this proof differentiates Hobbs Act violations from common law robbery. **U.S. v. Peterson**, 236 F.3d 848 (7th cir. 2001).

The petitioner does not challenge the robbery element of his conviction. Petitioner claims that since the Supreme Court's decision in **United States v. Lopez**, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), the proper test for the jurisdictional element in a federal statute is whether the activity "substantially affects" interstate commerse. Id. at 599, 115 S.Ct. 1624. (Cited from: **United States v. Wang**, 222 F.3d 234, 244 (6th cir. 2000)).

- 6 -

Under this standard, petitioner claims that there is insufficient evidence to support his conviction.

Consistent with the **Lopez** case, the jurisdictional test of a federal statute such as the Hobbs Act is whether the regulated activity "substantially affects" interstate commerce. The Supreme Court in **Lopez** acknowledged that, prior to **Lopez**, case law did not clearly indicate whether an activity must "affect" or "substantially affect" interstate commerce in order for Congress to exercise its power under the commerce clause. **Lopez**, 514 U.S. at 559, 115 S.Ct. 1624. The Supreme Court then announced that the test should be the "substantially affects" test. Id. The Supreme Court also noted that the jurisdictional element should be determined on a "case-by-case inquiry" Id. at 561, 115 S.Ct. 1624. (**United States v. Wang**, 222 F.3d 234, 244 (6th cir. 2000)).

To further support the petitioner's claim the Supreme Court in **Jones**, 146 L.Ed.2d 902, 120 S.Ct. 1904 (2000), made the determination that an owner occupied residence that is not currently used for any commercial purpose or used in an activity "affecting commerce" does not qualify as property "used in" commerce. In doing so, the Supreme Court specifically rejected three arguments as a basis for federal jurisdiction, one of which was the home was the subject of an insurance policy issued by an out-of-state insurance company.

On March 8, 1993, the District Court accepted a guilty plea from the petitioner for the Hobbs Act robbery, Title 18 U.S.C. § 1951 & 2, as well as three other charges. During the plea colloquy, the government stated the evidence it would use if the

- 7 -

case were to proceed to trial and stated that the resident, in which the robbery took place was insured by General Accident Insurance Company, which writes claims nationwide. "And the actions of these defendants thereby had an impact on interstate commerce." See plea hearing transcripts **(Exhibit #1)** P. 46, Line 22 thru P. 48, Line 11.

The petitioner claims that the court's finding that the evidence which the government intended to present at trial contains all the elements of the crime was, in fact, in error. See plea hearing transcripts **(Exhibit #1)** P. 72, Lines 11 thru 16.

Due to the test offered by the Supreme Court in **Lopez**, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), there is insufficient evidence to satisfy the jurisdictional element under the Hobbs Act robbery, Title 18 U.S.C. § 1951. And due to the Supreme Court decision in **Dewey J. Jones v. United States**, 529 U.S. 848, 146 L.Ed.2d 902, 120 S.Ct. 1904 (2000), interpreting the meaning of the statute, Title 18 U.S.C. § 844(i), the petitioner is not guilty of his Hobbs Act robbery, Title 18 U.S.C. § 1951.

Because the petitioner's claim is one of jurisdiction, the parties can raise jurisdictional defects at any time. **Kelly v. United States**, 29 F.3d 1107, 1113 (7th cir. 1994).

In conclusion, the petitioner has been convicted for a crime against the United States, a crime he did not commit and has demonstrated that the District Court for the Southern

District of Florida lacked jurisdiction to prosecute him under the Hobbs Act robbery, 18 U.S.C. § 1951. Therefore, the guilty plea entered by the petitioner should be deemed invalid.

Respectfully Submitted,

*Olando K. Chaff*
OLANDO K. CHAFF

## CERTIFICATE OF SERVICE

I, the below signed, hereby certify and swear under penalty of perjury, that a true and correct copy of the foregoing was sent U.S. Mail, first-class, pre-paid postage, by placing it in the Legal Mail box at F.C.I. Pekin, this __11TH__ day of __AUGUST__, 2004, to:

> Clerk of the District Court
> For the Central District of Illinois

*Olando K. Chaff*
Olando K. Chaff

- 9 -

EXHIBIT #1

```
                    IN THE UNITED STATES DISTRICT COURT
                   FOR THE SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA      )
                              )       CASE NUMBER
     VS.                      )
                              )       92-6138-CR-ZLOCH
ORLANDO KEITH CHAFF AND       )
SELBIE McNAIR-BEY             )
```

FILED '93 APR 27 A8:12
T.G. CHEL...
CLERK U.S. DIST...
S/D OF FLORIDA...

TRANSCRIPT OF PLEA HAD BEFORE THE HONORABLE WILLIAM J. ZLOCH, U. S. DISTRICT JUDGE, IN FORT LAUDERDALE, BROWARD COUNTY, FLORIDA, ON MONDAY, MARCH 8, 1993, IN THE ABOVE-STYLED ACTION.

- - -

APPEARANCES OF COUNSEL:

FOR THE GOVERNMENT:    LLOYD KING AND
                       MICHAEL WALLEISA, ESQS.,
                       ASSISTANT U. S. ATTORNEYS

FOR DEFENDANT CHAFF:   JOHN DAVID, ESQ.

FOR DEFENDANT
McNAIR-BEY:            RUBEN GARCIA, ESQ.

CARL SCHANZLEH
OFFICIAL COURT REPORTER
U. S. COURTHOUSE
299 E. BROWARD BLVD., 202B
FORT LAUDERDALE, FLORIDA 33301

46-51 + 70

46

1  MR. DAVID: THERE ARE NONE, YOUR HONOR.
2  THE COURT: MR. KING, ARE THERE ANY?
3  MR. KING: NO, SIR.
4  THE COURT: MR. WALLEISA?
5  MR. WALLEISA: NO, THERE ARE NOT, YOUR HONOR.
6  THE COURT: LET'S PROCEED IN THIS FASHION. THE
7  PROFFER AS TO BOTH MR. McNAIR-BEY AND MR. CHAFF AS TO COUNTS
8  FOUR, FIVE AND 10 WOULD BE IDENTICAL?
9  MR. KING: YES, SIR.
10  THE COURT: ALL RIGHT. LET'S PROCEED WITH A
11  PROFFER FROM THE GOVERNMENT ONLY AS TO COUNTS FOUR, FIVE AND
12  10 AS TO BOTH MR. McNAIR-BEY AND TO MR. CHAFF AS TO WHAT THE
13  GOVERNMENT'S EVIDENCE AT TRIAL WOULD REFLECT IF THIS MATTER
14  WAS TO GO TO TRIAL.
15  MR. McNAIR-BEY AND MR. CHAFF, I WANT YOU TO LISTEN
16  VERY, VERY CAREFULLY TO WHAT THE PROSECUTOR IS ABOUT TO SAY.
17  IF AT ANY TIME YOU DO NOT UNDERSTAND ANYTHING THAT HE SAID OR
18  YOU NEED TO HAVE ANYTHING REPEATED OR EXPLAINED TELL ME THAT
19  RIGHT AWAY, WILL YOU DO THAT?
20  MR. CHAFF: I WILL.
21  MR. McNAIR-BEY: YES.
22  THE COURT: ALL RIGHT. MR. KING, AS TO COUNTS
23  FOUR, FIVE AND 10 OF THE SECOND SUPERSEDING INDICTMENT,
24  PLEASE PROFFER TO ME WHAT THE GOVERNMENT'S EVIDENCE AT TRIAL
25  WOULD REFLECT IF THIS MATTER WAS TO GO TO TRIAL.

47

1   MR. KING: TO BRIEFLY SUMMARIZE THE EVIDENCE, YOUR
2   HONOR, THE GOVERNMENT WOULD PROVE THAT ON SEPTEMBER THE 15TH
3   OF 1992, DEFENDANT CHAFF, ALONG WITH DEFENDANT McNAIR-BEY AND
4   CODEFENDANT ELVIN IRIZZARY TRAVELED TO THE RESIDENCE OF THE
5   RICHARD SEAMAN FAMILY AT 7401 WEST CYPRESS HEAD DRIVE IN
6   PARKLAND, FLORIDA, WITHIN THE COUNTY OF BROWARD, THE STATE OF
7   FLORIDA, IN THE SOUTHERN DISTRICT OF FLORIDA.
8       UPON ARRIVING AT THAT RESIDENCE THE DEFENDANT
9   IRIZZARY APPROACHED THE FRONT DOOR, ASKED TO SPEAK TO THE
10  VICTIM RICHARD SEAMAN. WHEN MR. SEAMAN ANSWERED THE DOOR
11  DEFENDANT IRIZZARY PUSHED HIS WAY THROUGH THE DOOR, TACKLED
12  RICHARD SEAMAN AND FORCING HIM TO THE FLOOR.
13      DURING THIS STRUGGLE DEFENDANT IRIZZARY WAS
14  CARRYING A PISTOL WHICH DISCHARGED STRIKING THE FLOOR.
15  DEFENDANT McNAIR-BEY FOLLOWED DEFENDANT IRIZZARY THROUGH THE
16  FRONT DOOR, AND AT THAT POINT IN TIME PLACED HANDCUFFS ON THE
17  VICTIM RICHARD SEAMAN.
18      ALSO, DEFENDANT CHAFF ENTERED THE HOUSE FOLLOWING
19  THESE TWO INDIVIDUALS, ORDERED CINDI SEAMAN TO LIE ON THE
20  FLOOR, AT WHICH TIME SHE WAS HANDCUFFED.
21      FOLLOWING THAT POINT IN TIME DEFENDANT McNAIR-BEY
22  TOOK RICHARD SEAMAN TO THE MASTER BEDROOM OF THE RESIDENCE
23  AND WENT INTO A LARGE WALK-IN CLOSET AREA. ONCE IN THAT
24  AREA, DEFENDANT McNAIR-BEY TOOK JEWELRY AND A LARGE SUM OF
25  CASH WHICH RICHARD SEAMAN HAD IN THE CLOSET.

48

1         AFTER TAKING THOSE PARTICULAR ITEMS AND RETURNING
2 TO THE FRONT PART OF THE HOUSE, ALL THREE DEFENDANTS TOOK
3 RICHARD SEAMAN, HIS WIFE, CINDI SEAMAN, BOTH INDIVIDUALS
4 STILL HANDCUFFED, ALONG WITH THEIR TWO YEAR OLD DAUGHTER,
5 RACHEL SEAMAN, AND PLACED THEM IN A VAN OUTSIDE.
6         THE HOUSE AT THAT POINT IN TIME WAS INSURED WITH
7 THE HOMEOWNERS INSURANCE POLICY THROUGH GENERAL ACCIDENT
8 INSURANCE COMPANY. THE SEAMANS WERE LATER TO FILE A CLAIM ON
9 THAT POLICY. THE COMPANY DOES WRITE INSURANCE NATIONWIDE.
10 THE CLAIM, THEREFORE, AND THE ACTIONS OF THESE DEFENDANTS
11 THEREBY HAD AN IMPACT ON INTERSTATE COMMERCE.
12         AFTER LOADING THE VICTIMS INTO THE VAN THE
13 DEFENDANTS BEGAN DRIVING NORTHWARD. DEFENDANT McNAIR-BEY
14 INDICATED THAT THEY WERE GOING TO HOLD THE FAMILY FOR TWO
15 MILLION DOLLARS OR OVER TWO MILLION DOLLARS RANSOM TO BE PAID
16 BY RICHARD SEAMAN'S FATHER. THE DEFENDANTS DROVE THE VICTIMS
17 TO A RESIDENCE AT 11500 WHISPER SOUND IN BOCA RATON IN PALM
18 BEACH COUNTY.
19         DURING THE COURSE OF THE TRIP AND AFTER ARRIVING AT
20 THAT RESIDENCE RICHARD SEAMAN INDICATED TO THE DEFENDANTS
21 THAT HIS FATHER WOULD NOT PAY THAT SUM OF MONEY, BUT THAT HE
22 COULD, OR THAT HE WOULD NOTIFY THE FBI OF THE REQUEST FOR
23 THAT SUM OF MONEY, AND THAT HE COULD TRAVEL TO HIS INVESTMENT
24 BROKER AND OBTAIN --- INSTEAD OF HIS FATHER'S MONEY OBTAIN
25 $700,000.

1           AT THAT POINT IN TIME DEFENDANT IRIZZARY AND CHAFF
2   LEFT THE RESIDENCE TO GO GET A RENTAL VAN IN ADDITION TO THE
3   VAN WHICH THEY ALREADY HAD.  AFTER RETURNING WITH THE RENTAL
4   VAN IT WAS AGREED THAT DEFENDANT CHAFF WOULD ACCOMPANY
5   RICHARD SEAMAN TO MR. SEAMAN'S INVESTMENT BROKER, THAT BEING
6   SHEARSON LEHMAN IN CORAL SPRINGS, FLORIDA.
7           AT THAT POINT IN TIME, DEFENDANT CHAFF AND RICHARD
8   SEAMAN DEPARTED TO THE INVESTMENT BROKER.  UPON ARRIVAL AT
9   CORAL SPRINGS AT THE LOCATION, MR. SEAMAN WENT INSIDE
10  SHEARSON LEHMAN BROTHERS, USED THE TELEPHONE AND CALLED 911.
11          DEFENDANT CHAFF WAS WAITING IN THE AREA AROUND THE
12  SHEARSON LEHMAN OFFICE, AT WHICH TIME LOCAL POLICE BEGAN
13  FOLLOWING HIM.  A CHASE ENSUED, AND AFTER SOME DISTANCE
14  DEFENDANT CHAFF WRECKED THE VAN THAT HE WAS DRIVING AND HE
15  WAS ARRESTED BY OFFICERS.
16          FOUND ON HIS PERSON WAS OVER $8,000 IN CASH HAVING
17  COME FROM THE RESIDENCE OF RICHARD SEAMAN.  ALSO, DURING THE
18  CHASE, A SHORT DISTANCE AWAY FROM WHERE DEFENDANT CHAFF
19  WRECKED THE VAN, HE HAD THROWN A SMITH AND WESSON .38 CALIBER
20  REVOLVER FROM THE VAN INTO THE MEDIAN.  THAT WEAPON WAS
21  RECOVERED.  IT WAS DETERMINED THAT THAT WEAPON HAD BEEN
22  MANUFACTURED IN SPRINGFIELD, MASSACHUSETTS.
23          ALSO, SHEARSON LEHMAN BROTHERS IS A MULTINATIONAL
24  INVESTMENT BROKER ACCOUNT AND, THEREFORE, THE ATTEMPTS TO
25  TAKE MR. SEAMAN'S MONEY FROM HIS ACCOUNTS HAD, OR WOULD HAVE

50

1  HAD AN IMPACT ON INTERSTATE COMMERCE.
2  AFTER DEFENDANT CHAFF AND MR. SEAMAN HAD LEFT THE
3  RESIDENCE IN BOCA RATON, DEFENDANT McNAIR-BEY, ALONG WITH
4  CINDI SEAMAN, RACHEL SEAMAN TRAVELED TO THE DAYS INN AT 1595
5  WEST OAKLAND PARK ROAD HERE IN FORT LAUDERDALE.
6  UPON ARRIVING AT THE DAYS INN THEY ENTERED ROOM
7  105, WHICH HAD BEEN PREVIOUSLY BEEN RENTED BY DEFENDANT
8  IRIZZARY.
9  THE POINT IN TIME CAME WHERE DEFENDANT IRIZZARY
10 LEFT THAT HOTEL ROOM TO GO MEET DEFENDANT CHAFF BELIEVING
11 THAT HE HAD BEEN SUCCESSFUL IN HIS EFFORTS TO GET THE MONEY
12 FROM SHEARSON LEHMAN ACCOUNT.
13 AT THAT POINT IN TIME AT THE MEETING POINT LOCAL
14 POLICE OFFICERS SURROUNDED DEFENDANT IRIZZARY IN A VAN HE WAS
15 DRIVING AND PLACED HIM UNDER ARREST.
16 RECOVERED FROM THAT VAN WAS A SMITH AND WESSON NINE
17 MILLIMETER PISTOL HAVING BEEN MADE -- EXCUSE ME, RECOVERED
18 FROM THAT VAN WAS A FRANKFURT ARSENAL .223 SEMIAUTOMATIC
19 RIFLE, A 12 GAUGE MOSSBERG SHOTGUN, AND A .380 BROWNING
20 SEMIAUTOMATIC PISTOL, ALL THREE OF THOSE WEAPONS HAVING BEEN
21 MADE OUTSIDE THE STATE OF FLORIDA AND, THEREFORE, HAVING
22 TRAVELED IN INTERSTATE COMMERCE.
23 AFTER DEFENDANT IRIZZARY'S ARREST HE COOPERATED
24 WITH THE GOVERNMENT, TOLD THE OFFICERS THAT DEFENDANT
25 McNAIR-BEY WAS AT THE DAYS INN HOTEL ALONG WITH THE TWO

51

1  REMAINING VICTIMS.  HE PLACED A TELEPHONE CALL TO THE DAYS
2  INN ROOM, AT WHICH TIME MR. McNAIR-BEY ALLOWED CINDI SEAMAN
3  AND HER DAUGHTER RACHEL TO LEAVE THE ROOM.  THE OFFICERS THEN
4  ARRESTED DEFENDANT McNAIR-BEY.
5       FROM WITHIN THE ROOM, AMONG OTHER THINGS, THEY
6  SEIZED A SMITH AND WESSON NINE MILLIMETER SEMIAUTOMATIC
7  PISTOL, THAT PISTOL HAVING BEEN MADE IN SPRINGFIELD,
8  MASSACHUSETTS.
9       AS TO DEFENDANT CHAFF IN COUNT 12, THE DEFENDANT
10  HAS PREVIOUSLY BEEN CONVICTED IN --
11       THE COURT:  WELL, EXCUSE ME FOR JUST A MINUTE.
12       MR. KING:  EXCUSE ME.
13       THE COURT:  IS THAT THE GOVERNMENT'S PROFFER AS TO
14  COUNTS FOUR, FIVE AND 10 OF THE SECOND SUPERSEDING
15  INDICTMENT?
16       MR. KING:  YES, IT IS, YOUR HONOR.
17       THE COURT:  AND THESE ACTIVITIES TOOK PLACE WHERE?
18       MR. KING:  IN BROWARD AND PALM BEACH COUNTIES IN
19  THE SOUTHERN DISTRICT OF FLORIDA.
20       THE COURT:  MR. CHAFF, AS TO COUNTS FOUR, FIVE AND
21  10, DID YOU HEAR EVERYTHING THAT THE PROSECUTOR JUST SAID?
22       MR. CHAFF:  YES, I DID.
23       THE COURT:  AND DID YOU UNDERSTAND EVERYTHING THE
24  PROSECUTOR SAID?
25       MR. CHAFF:  YES, I DID.

1   MR. DAVID: I AM, YOUR HONOR.
2   THE COURT: ORLANDO KEITH CHAFF, HOW DO YOU PLEAD
3   TO THE CHARGES IN COUNTS FOUR, FIVE, 10 AND 12 OF THIS SECOND
4   SUPERSEDING INDICTMENT, GUILTY OR NOT GUILTY?
5   MR. CHAFF: GUILTY, YOUR HONOR.
6   THE COURT: THE COURT FINDS THAT THE DEFENDANT,
7   ORLANDO KEITH CHAFF, IS NOW ALERT AND INTELLIGENT, THAT HE
8   UNDERSTANDS THE NATURE OF THE CHARGES AGAINST HIM,
9   APPRECIATES THE CONSEQUENCES OF PLEADING GUILTY, UNDERSTANDS
10  THE POSSIBLE PENALTIES AND FULLY UNDERSTANDS HIS RIGHTS.
11  THE COURT ALSO FINDS THAT THE FACTS THAT THE
12  GOVERNMENT IS PREPARED TO PROVE AT TRIAL, AND WHICH BY HIS
13  PLEA ARE SUFFICIENT TO SUSTAIN THE PLEA, OR WHICH BY HIS PLEA
14  THE DEFENDANT ADMITS ARE SUFFICIENT TO SUSTAIN THE PLEA AND
15  THAT THE EVIDENCE WHICH THE GOVERNMENT INTENDS TO PRESENT AT
16  TRIAL CONTAINS ALL OF THE ELEMENTS OF THE CRIME.
17  THE COURT ALSO FINDS THAT MR. CHAFF'S DECISION TO
18  PLEAD GUILTY IS MADE KNOWINGLY, VOLUNTARILY AND
19  INTELLIGENTLY, AND THAT IT IS NOT THE RESULT OF FORCE,
20  THREATS, PROMISES, COERCION OR INTIMIDATION APART FROM THE
21  PLEA AGREEMENT, AND THAT HE HAS HAD THE ADVICE AND COUNSEL OF
22  A VERY COMPETENT LAWYER WITH WHOM HE SAYS HE IS SATISFIED.
23  THE PLEA OF GUILTY WILL BE ACCEPTED. THE COURT
24  FINDS THE DEFENDANT, ORLANDO KEITH CHAFF, GUILTY OF THE
25  OFFENSES CHARGED IN COUNTS FOUR, FIVE, 10 AND 12 OF THIS